IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

EMIR SEHIC,                          )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )     CIV. ACT. NO.  3:12cv614-WKW-TFM
                                     )               (WO)
WILLIAM VAN ANDERSON, *et al.*,      )
                                     )
          Defendants.                )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

On August 20, 2012, Plaintiff Emir Sehic filed suit in this court asserting state law claims of fraud, deceit, misappropriation, unlawful interference with a tenant relationship, deprivation of personalty, and breach of fiduciary duty.  In addition, Plaintiff requests that this court decree a dissolution of the partnership.  Plaintiff alleges that he is a law student at the University of Georgia in Athens, Georgia, and is a citizen of the State of Alabama. (Doc. No. 7, p. 1.) Defendants William Van Anderson and Mayuka S. Anderson are citizens of the State of California.  (*Id.*, p.2.)  Now pending before the court is a Motion for a Change of Venue filed by Defendants.  (Doc. No. 8.)  Plaintiff's allegations in this lawsuit stem from a business partnership between Plaintiff and Defendants, in which several real estate investments were made.

On September 4, 2012, Defendants filed a Motion to Transfer Venue from the United States District Court for the Middle District of Alabama to the United States District Court for the Northern District of California.  (Doc. No. 8.)  On October 2, 2012, Plaintiff submitted a Response.  (Doc. No. 15.)  On October 15, 2012, Defendants filed a Reply to the plaintiff's Response.  (Doc. No. 16.)  On October 18, 2012, Plaintiff filed a Supplemental Memorandum in Opposition to Defendants' Motion to Change Venue.  (Doc. No. 18.)  Upon consideration of the Motion to Transfer, the parties' responses and evidentiary materials, the court concludes that this case should be transferred to the Eastern District of California.

## II. DISCUSSION

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to a district where it could have been brought for the convenience of the parties; the convenience of the witnesses; and the interests of justice.  The decision to transfer a case is within the discretion of the trial court with the propriety of transfer being decided based on the facts of each individual case.  *See Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988);  *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1196 (11th Cir. 1991); *Hutchens v. Bill Heard Chevrolet Co.*, 928 F. Supp. 1089, 1090 (M.D. Ala. 1996).  Under § 1404(a), a district court should not transfer a case unless "the movant can show that [the plaintiff's choice of forum] is clearly outweighed by other considerations."  *Howell v. Tanner*, 650 F.2d 610, 616 (5th

2

Cir. 1981).[1]  *See also, Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996); *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1357 (M.D. Ala. 1998).

> Section 1404 factors include:
>
> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with governing law; (8) the weight accorded to a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

## A.  An Adequate Alternative Forum

When jurisdiction rests on diversity of citizenship, as is the case here, venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a)(1).   In this case, several events occurred in both Alabama and California.

Plaintiff first met the Anderson family at a shopping center in Palo Alto, California in November 2005.  (Doc. No. 7, p. 4.)  At some point in 2006, Plaintiff and Defendants began a business partnership, in which several real estate investments were made.  (Doc. No.

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

7, p. 5.) Plaintiff alleges that between June 20, 2007 and January 6, 2010, he deposited over $79,000 of his personal funds into the Defendants' checking account as part of his investment into four real estate properties in California. (*Id*.)

First, in April 2006, the partnership purchased property at 11621 Quartz Avenue in Montague, California for $94,000, with the deed in Plaintiff's name. (*Id*.; Pl's Ex. C.) Plaintiff and Defendants agreed to a "50/50 owner[ship] of Quartz and . . . to split the mortgage, insurance, proceeds and costs of repair." (*Id*.; Pl's Exs. E & F.) In January 2011, the property was damaged by fire and the remaining principal was subsequently reduced to $20,000. (*Id*., p. 7.) The plaintiff alleges that, since April 2012, the defendants have not placed the rental proceeds into his checking account. (*Id*., p. 9.)

In June 2007, the partnership purchased property at 14332 Coyote Street in Hornbrook, California. (*Id*., p. 6.) In July 2011, the Partnership paid off a loan off the property in full. (*Id*., p. 8.)

In March 2008, the partnership purchased property at 3408 Fir Court in Hornbrook, California for $75,000. (*Id*., p. 6.) Each partner agreed to contribute to the down payment and escrow fees, with the returns to be split equally. (*Id*., p. 7.) In late 2011 or early 2012, foreclosure proceedings on the property began. (*Id*., pp. 8-9.) According to Plaintiff, Defendants informed him that the overall gain from the Fir foreclosure totaled $7,517.25. (*Id*., p. 9.) Plaintiff alleges that the defendants did not place any funds of the proceeds of the sale into his checking account. (*Id*.)

Between 2007 and 2009, Plaintiff loaned Defendants $20,000 for improvements to the property at 143 W. Acacia Street in Stockton, California.  (*Id*., p. 6.)  The parties agreed that Plaintiff would receive the difference between the sales price and $375,000 if the property sold for over that amount and that he would recoup his loan amount of $20,000 if the property sold for less.  (*Id*.)  In June 2008, Plaintiff flew to California and worked on the Acacia property for several days.  (*Id*., p. 7.)  In November 2011, Defendant William Anderson informed Plaintiff that the City of Stockton had placed a tax injunction against the Acacia property.  (*Id*.; Pl's Ex. Y.)

The partnership also invested in one house in Alabama.  On May 16, 2008, the partnership purchased real estate at 2216 Summerwind Drive in Phenix City, Alabama for $110,322  (*Id*., p. 6; Pl's Ex. A.)  Plaintiff managed the property and invested an additional $2700 for "rent differentials and repairs."  (*Id*., p. 8.)

Thus, a substantial part of the events or omissions giving rise to the plaintiff's claims of fraud, deceit, misappropriation, unlawful interference, deprivation of personalty, breach of fiduciary duty, and partnership dissolution occurred in California.  This court therefore concludes that this lawsuit could have originally been brought in either the Northern District of California or the Eastern District of California.

**B.  Factor Analysis**

**(1)  Convenience of Witnesses**

Other than the plaintiff's forum choice, a factor which is discussed below, the most

important factor is the convenience of witnesses.  *See Owens v. Blue Tee Corp.*, 177 F.R.D. 673, 679 (M.D. Ala. 1998).   Furthermore,"[t]he convenience of non-party witnesses is important, if not the most important, factor in determining whether a motion for transfer should be granted." *Conseal International Inc. v. Econalytic Systems, Inc.*, No. 09-60477-CIV, 2009 WL 1285865 (S.D. Fla. 2009) (discussing transfer under § 1404(a)).

The defendants provide a laundry list of witnesses whose proffered testimony is of little relevance to the matters set forth in this lawsuit.  For example, the defendants assert that they intend to call Russell Redfield to testify that the Andersons "sought out the best possible prices and shopped almost exclusively at Home Depot."  (Doc. No. 16, p. 16.)  Obviously, the testimony of Mr. Redfield and other similar witnesses are not in any way material to the case before the court.   Nonetheless, the court must liberally construe pleadings of pro se litigants. *See Hughes v. Rowe*, 449 U.S. 5 (1980); *Diaz v. United States*, 930 F.2d 832 (11th Cir. 1991). Moreover,

> . . . the term witnesses may have two different practical meanings.  First, there are witnesses who may have any conceivable knowledge about any conceivable issue in litigation.  A lawyer's initial list of these witnesses may therefore go on for pages.  Prior to trial, these witnesses are usually questioned informally and, if they have significant material information, questioned formally (through depositions, affidavits, etc.) in the communities where they live or work.  For the most part, the trial venue does raise a convenience issue for them.  Second, there are witnesses who are likely to be called at trial and for whom the convenience of the trial venue can be an issue.  This list comes from the first group and can often end up being substantially smaller, often fewer than a handful even though the first group was quite large.  On a transfer motion, all that the court is asking the parties to do is to make an educated guess as to the size of the second group, that is, a guess with some articulable reason to back it up.

*Carroll v. Texas Instruments, Inc.*, No. 2:11cv1037-MHT, 2012 WL 1533785, *3 (M.D. Ala. 2012).

Despite identifying several non-material witnesses, the defendants also list several witnesses who reside in or near the Eastern District of California who arguably may provide material testimony concerning the use of partnership funds to repair, maintain, or insure the California properties.[2] (Doc. No. 16, pp. 8-18.)  For example, the defendants assert that they plan on calling Mike Britton of Siskiyou Electric and Plumbing to testify about timely payments and  property maintenance and Ken Rogers of Yreka, California, as well as Justin Cynor of Petaluma, California to testify regarding repairs made to the property.  (*Id.*, p. 8, 9, 13.)  The convenience of California witnesses who may be able to provide testimony concerning the defendants' management of the properties and the use of investment funds weigh in favor of transfer.

Plaintiff asserts his intention to call seven witnesses.  He identifies two witnesses who reside in or near Columbus, Georgia.  Specifically, he intends to call Dawn Dunnigan to testify concerning representations made by the defendants, rents received, and the plaintiff's work on the property at 2216 Summerwind Drive in Phenix City, Alabama.  (Doc. No. 15, p. 4.)  He also intends to call Fred Greene to testify concerning the management of the Summerwind property, rents received, and work completed on the property.  (*Id.*)  In

---

[2] At this stage of the proceedings, this court makes no determination as to the admissibility of such testimony.

7

addition, Plaintiff lists Jonathan Wiens of Bethesda, Maryland as a witness who will testify about "the partnership relationship between the Plaintiff and Defendants, and the maintenance performed on Summerwind."[3]   The claims as set forth in the Amended Verified Complaint, however, primarily concern real estate investments in California, specifically the Quartz, Fir, Coyote, and Acacia properties as well as alleged misrepresentations made by Defendants to the plaintiff and potential investors. (Doc. No. 7.)  Plaintiff's management of the Alabama property, the timeliness of rental payments, and the work performed by Plaintiff are not in dispute.   Nonetheless, for purposes of this Recommendation, the court will presume that the witnesses from Georgia may be able to provide some material testimony.

The plaintiff also expects to call his father, Dr. Elmir Sehic, of Dennis, Massachusetts, to testify about a conversation with Mr. Anderson in 2006 and "misrepresentations and guarantees" made by him. (Doc. No. 15, Pl's Ex. A.)  The Complaint, however, alleges that Defendants engaged in deceit by misrepresenting material facts to Plaintiff.  Thus, the court questions how Defendant William Anderson's alleged misrepresentations to another person are admissible.  At this stage of the proceedings, however, the court will not entertain such evidentiary rulings.  Consequently, for purposes of this Recommendation, the court will presume that Dr. Sehic's testimony is material to the plaintiff's case.

Plaintiff argues that his father and Mr. Wiens would be substantially inconvenienced

---

[3] There are inconsistencies in the affidavit signed by Jonathan C. Wiens.  The affidavit states that Mr. Wiens is a "resident of Valley County, State of Montana"; however, it also states, "I, CPT Jonathan Wiens, reside in Maryland.  I live [in] Bethesda, MD 20814." (Doc. No. 15, Pl's Ex. B.)

by having to travel to California. In an affidavit, Dr. Sehic asserts that, as a physician, traveling to California would "force [him] to reschedule patients for at least two business days each time [he] was required to travel" whereas he would be able to travel to and from Montgomery within the same day, and that airline tickets to Montgomery would be less costly. (*Id.*) Plaintiff also provides the affidavit of Mr. Wiens who states his willingness to travel to Montgomery, Alabama and that "[h]aving to fly in either case, travel to Montgomery is more beneficial since the flight time is shorter, I can get back home on the same day, and the tickets are less costly than traveling to San Francisco, California." (Doc. No. 15, Pl's Ex. B.) The Federal Rules of Civil Procedure provide a variety of methods in which to reduce traveling inconveniences to witnesses. *See* FED.R.CIV.P. 32, 43. Thus, the court finds that the convenience of these witnesses does not weigh heavily against transfer.

Plaintiff's remaining witnesses are from California and Oregon. (Doc. No. 15, pp. 4-5.) Plaintiff asserts that some of these witnesses would be willing to travel to Montgomery, Alabama. However, it is clearly more convenient for these witnesses to appear in California than to travel to Alabama. Thus, the convenience of these witnesses weighs in favor of transfer to California.

### (2)   Location of Relevant Documents and Sources of Proof

Few documents or other evidentiary materials related to the fraud, deceit, misappropriation, unlawful interference with a tenant relationship, deprivation of personalty,

breach of fiduciary duty, and the formation of the partnership are in this District.  With the exception of the purchase of the Summerwind property in Phenix City, Alabama, there are no relevant documents or any other significant evidence located in the Middle District of Alabama.  All of the evidence, obviously, could be made available in either forum.  "[I]n this current era of technology, document production is not as onerous as it once was, and scores of file boxes filled with paper (if they exist) need not travel across the country."  *Conseal International Inc.*, *supra*.  Thus, the location of relevant documents is not a significant factor in this case.

### (3)    **Convenience of the parties**

Next, the court addresses the relative convenience of the parties litigating this case in either Alabama or California.   Transfer is inappropriate where it "merely shift[s] inconvenience from the defendants to the plaintiff."  *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).  Neither of the parties resides in the Middle District of Alabama.  Plaintiff is a resident of Georgia and Defendants are residents of California. Thus, both of the parties will be inconvenienced to some extent.  Plaintiff's place of residence, Athens, Georgia, is closer to this court than the proposed venue in California. However, based on the remaining factors discussed below, transferring the case would be more convenient overall, and not merely shift the burden from Defendants to Plaintiff.  This factor weighs slightly against transfer.

10

**(4)    Locus of Operative Facts**

The court finds that the operative facts underlying the plaintiff's claims in this civil lawsuit transpired in California, and more specifically, in the Eastern District of California. With the exception of the Summerwind property, all of the properties in which the plaintiff seeks to redistribute as part of dissolution of the partnership are located in San Joaquin and Siskiyou counties in California.  In addition, the partnership was formed in California and most of the alleged misrepresentations and fraud occurred there. Thus, the locus of operative facts weigh in favor of a forum in California.

**(5)  Availability of Process to Compel Unwilling Witnesses**

The non-party witnesses in California and Oregon cannot be compelled by this court to appear in Alabama and the Georgia non-party witnesses cannot be compelled by this court to appear in California. Pursuant to the Federal Rules of Civil Procedure, a subpoena may be quashed when it requires "a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial."   FED.R.CIV.P. 45(c)(3)(B)(iii).   Because the locus of operative facts occurred in the Eastern District of California, including the alleged misappropriation of funds, most of the misrepresentations, tax problems, litigation in state courts, and foreclosure proceedings, it is arguable that there are several more material witnesses in California than in Alabama.  This factor weighs heavily in favor of transfer.

11

**(6)  Relative Means of the Parties**

The defendants argue that the cost associated with bringing witnesses to trial in Alabama is more prohibitive than if the trial were brought in California.  Plaintiff argues that he is a law student and therefore he will be unduly burdened and financially prejudiced if the case is transferred.  The pleadings, however, indicate that both Plaintiff and Defendants travel and/or conduct business in both California and Alabama, as well as other locations throughout the United States.  Thus, the court weighs this factor neutrally.

**(7)     A Forum's Familiarity with Governing Law**

Plaintiff cites to Alabama law throughout the Amended Verified Complaint.  The majority of his claims, however, concern representations made by Defendant William Anderson to potential investors in California and other states.  To the extent the Plaintiff's claims concern the property in Alabama, the Eastern District of California is as capable as this court in considering simple tort claims, such as fraud and misrepresentation.  In addition, the Eastern District of California is a more appropriate forum to determine whether a dissolution of the partnership and its assets is necessary in this case. The pleadings and evidentiary materials clearly indicate that there are a multitude of problems associated with each California property, including local tax problems, insurance claims, and lawsuits in small-claims court.  As previously discussed, the formation of the partnership and the majority of property is in California.  Thus, California law is applicable with respect to the

12

dissolution of the partnership.  This factor weighs heavily in favor of transfer.

### (8)  Weight Accorded to the Plaintiff's Choice of Forum

The court recognizes that a plaintiff's choice of forum is afforded considerable deference.  *Hale v. Cub Cadet, LLC*, No. 3:10cv697-MEF, 2010 WL 4628185, * 4 (M.D. Ala. 2010).  The weight assigned to a plaintiff's forum choice is significant and "'will not be disturbed unless the other factors weigh substantially in favor of transfer.'" *Id.* (citing *Mohamed v. Mazda Motor Corp.*, 90 F. Supp.2d 757, 774 (E.D. Tex. 2000)).  In this case, the partnership itself was formed in California, the location of the majority of the properties is in California, and most of the plaintiff's claims concern representations made by the defendants to investors, including the plaintiff, while in California or nearby states.  The location of the property and the formation of the partnership is material to resolution of the issues in this case, especially if the court were to order a dissolution of partnership assets. The court concludes that these factors outweigh the plaintiff's forum choice.

### (9)  Interests of Justice

Finally, this court must consider whether interests of justice weigh in favor of transfer. There is no indication that the plaintiff will be substantially prejudiced by transfer as this case is in its infancy.  The court has carefully considered each of the above factors and finds that they are mostly neutral or weigh in favor of transfer.  "[I]t is undisputed that courts will not

blindly prefer the plaintiff['s] choice of forum over a more convenient location." *Summers-Wood  L.P. v. Wolf*, 2008 WL 2229529 (N.D. Fla. May 23, 2008) (citations omitted). Transferring the case to the Eastern District of California would result in significantly greater convenience for the majority of non-party witnesses and the defendants, while at the same time, be less convenient for the plaintiff and some of his witnesses.  Given the importance of testimony of the non-party witnesses in California and the request for a dissolution of partnership assets, including the California properties, the court concludes that transfer is appropriate in the interest of justice.

The court recognizes that Defendants request transfer to the Northern District of California.  Upon review of the facts as alleged in this case, it is clear to the court that the Eastern District of California is the more appropriate forum.  All of the California properties at issue in this case are located in the Eastern District of California and the majority of non-party witnesses reside or work nearby the area.

Accordingly, it is the Recommendation of the Magistrate Judge as follows:

(1)    To the extent the defendants request transfer to the Northern District of California, the Motion to Transfer be DENIED.

(2)    To the extent the defendants move to transfer this case to another District in California, the Motion to Transfer be GRANTED.

(3)    In the interest of justice, this case be transferred to the Eastern District of California pursuant to 28 U.S.C. § 1404(a).

14

It is further

ORDERED that on or before **November 29, 2012** the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 14th day of November, 2012.

_____/s/Terry F. Moorer_____
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE